# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| **ARCHIE CABELLO,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **EP-23-CV-27-FM** |
| | § | |
| **REGIONAL DIRECTOR TELLEZ,** | § | |
| **Respondent.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Archie Cabello, Federal Prisoner Number 73097-065, challenges recent changes to his Inmate Financial Responsibility Program (IFRP) payment plan by the Bureau of Prisons (BOP). Pet'r's Pet., ECF No. 1. He petitions for relief under 18 U.S.C. § 3664(k), which allows a court to adjust a payment schedule after it receives notification of a material change in a defendant's economic circumstances. *Id*. at 1. But Cabello's IFRP payments are administered by the BOP, "and a challenge to BOP administrative programs must be filed under 28 U.S.C. § 2241." *United States v. Diggs*, 578 F.3d 318, 319 (5th Cir. 2009). Moreover, his claims are both unexhausted and for the reasons discussed below lack merit. As a result, he is not entitled to § 2241 relief.

## BACKGROUND

Cabello is a 75-year-old federal prisoner at the La Tuna Federal Correctional Institution in Anthony, Texas. *See* Find an Inmate, https://www.bop.gov/inmateloc/ (search for Reg. No. 73097-065) (last visited Jan. 24, 2023). His projected release date is March 11, 2028. *Id*. His place of confinement is in El Paso County, which is within the jurisdiction of the United States District Court for the Western District of Texas. 28 U.S.C. § 124(d)(3).

Cabello pleaded guilty to conspiring to defraud the United States, possessing stolen bank funds, making false statements on credit applications, making and subscribing a false income tax return, and conspiring to launder money. *United States v. Cabello*, 599 F. App'x 761, 761 (9th Cir.

2015); *see also Cabello v. United States*, No. EP-21-CV-242-FM, 2021 WL 4953909, at *1 (W.D. Tex. Oct. 22, 2021), *aff'd*, No. 21-51066, 2022 WL 2713229 (5th Cir. July 13, 2022). He was sentenced to 240 months' imprisonment. *United States v. Cabello*, 3:10-CR-482 (D. Ore.), Am. J. Crim. Case 3, ECF No. 270 at 3. He was also ordered to pay a "[l]ump sum payment of $3,755,000.00 due immediately" in restitution. *Id*. at 7. Nevertheless, he was permitted to make periodic restitution payments while in prison according to the following schedule with the caveat that additional money from any source could be applied to restitution still owed:

> Payment of criminal monetary penalties, including restitution, shall be due during the period of imprisonment as follows: (1) 50% of wages earned if the defendant is participating in a prison industries program; (2) $25 per quarter if the defendant is not working in a prison industries program.

> It is ordered that resources received from any source, including inheritance, settlement, or any other judgment shall be applied to any restitution or fine still owed, pursuant to 18 USC § 3664(n).

*Id.*

Cabello claims he volunteered to participate in the IFRP and paid $25.00 in restitution each quarter for about nine years. Pet'r's Pet., ECF No. 1 at 4. He explains—correctly—to do otherwise would have resulted in the loss of privileges and other punitive "repercussions."[1] *Id*. Then, on April 8, 2022, he was awarded about $150 a month in disability benefits by the Department of Veterans Affairs (VA). *Id*. at 3; Ex. 2, ECF No. 1-1. In addition, he received a lump sum payment of $1,483.90 to cover the period between the date of his application and the date of his award. Pet'r's Pet., ECF No. 1 at 3. Unfortunately, he also received a second lump sum payment of

---

[1] Failure to comply with the IFRP often results in the loss of prison privileges and incentives including parole, furloughs, performance or vacation pay, outside work details, UNICOR work privileges, special purchase entitlements, community-based programs, and loss of housing status whereby the inmate will be quartered in the lowest status prison housing. 28 C.F.R. § 545.11(d).

$1,483.90 in error, and the VA has proposed that it withhold $25.00 each month from future disability payments until the overpayment is recovered. Ex. 5, ECF No. 1-1.

Cabello complains that, because he now receives VA disability benefits, Regional Director Tellez has increased his IFRP restitution payments from $25 per quarter to $100 per month. Pet'r's Pet., ECF No. 1 at 4. He argues this increase "does not come under the scope of § 3664(n)." *Id.* at 3. He claims "§ 3664(n) 'refers to windfalls or sudden financial injection' . . . that 'become suddenly available' to the defendant." *Id.* at 5 (quoting *United States v. Hughes*, 914 F.3d 947 (5th Cir. 2019). He suggests his VA disability benefits are not a windfall or sudden financial injection. He asks the Court to order Regional Director Tellez to rescind the order and return all payments in excess of $25.00 per quarter to his inmate trust account. *Id.* at 7.

## APPLICABLE LAW

"A section 2241 petition for habeas corpus on behalf of a sentenced prisoner attacks the manner in which his sentence is carried out or the prison authorities' determination of its duration." *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted). To prevail, a § 2241 petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). And he must show that he has exhausted his administrative remedies before filing his federal petition. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam).

When a court receives a § 2241 petition, it accepts a petitioner's allegations as true during the initial screening. 28 U.S.C. § 2243; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). It also evaluates a petition presented by a *pro se* petitioner under more a lenient standard than it applies to a petition submitted by counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But it must still find "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 556.

Upon completing the initial screening, a court must "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)), 28 U.S.C. foll. § 2254.

## ANALYSIS

### A. Exhaustion

An initial issue which a court must address when screening a § 2241 petition is whether the petitioner has exhausted his administrative remedies. *Fuller*, 11 F.3d at 62. This is because a petitioner must first exhaust all administrative remedies which might provide appropriate relief before seeking judicial review. *Id.*; *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993). Exhaustion in this context means "proper exhaustion," including compliance with all administrative deadlines and procedures. *Cf. Woodford v. Ngo*, 548 U.S 81, 90 (2006) (discussing exhaustion under the Prison Litigation Reform Act).

A federal prisoner must use the BOP's multi-tiered administrative remedy program to "seek formal review of an issue relating to any aspect of [his] confinement." 28 C.F.R. § 542.10(a). Initially, he must attempt to informally resolve the complaint with the staff with a Form BP-8. *Id.* § 542.13(a). If his informal attempts are unsuccessful, he must submit a written complaint to his warden within twenty calendar days of the incident on a Form BP-9. *Id.* § 542.14. If he is not satisfied with the warden's response, he may appeal to the Regional Director within twenty days after the warden's response on a Form BP-10. *Id.* § 542.15. If still not satisfied, he may appeal to the Central Office within thirty days of the Regional Director's decision on a Form BP-11. *Id.*

"Exceptions to the exhaustion requirement are appropriate where the available

4

administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Fuller*, 11 F.3d at 62 (internal citations omitted). Exceptions may be made only in "extraordinary circumstances," and the petitioner bears the burden of demonstrating the futility of administrative review. *Id.*

Cabello claims he "tried to explain" to his counselor that "half of the funds were in his account in error." Pet'r's Pet., ECF No. 1 at 4. He adds his counsel "was not interested because the order [to increase is IFRP payments] came from the regional director [and] there was nothing he could do." *Id*. Notably, he does not suggest he challenged the increase in his IFRP payments any further.

Cabello has clearly not exhausted his available administrative remedies through all levels of the administrative review process. And he has offered no evidence suggesting the available administrative remedies are either unavailable or wholly inappropriate to the relief he now seeks. If he has a meritorious claim, there is nothing to suggest that the BOP would not afford him relief through its administrative review process. If Cabello has identified an error in collecting restitution through the IFRP, he must afford the BOP an opportunity to correct the error before he is permitted to seek judicial intervention. So, an attempt by Cabello to exhaust through the BOP administrative review process would clearly *not* be a patently futile course of action. And while "[i]t is true that exhaustion . . . takes time, . . . there is no reason to assume that . . . prison administrators . . . will not act expeditiously." *Preiser v. Rodriguez*, 411 U.S. 475, 494–95 (1973).

Consequently, the Court finds that Cabello has failed to exhaust his administrative remedies. And it notes that dismissal on this basis alone is warranted. *See Rivkin v. Tamez*, 351 F.

App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies). But even if Cabello had properly exhausted, the Court would still not grant him § 2241 relief.

### B. Merits

Cabello complains Regional Director Tellez improperly increased his IFRP restitution payments from $25 per quarter to $100 per month after he started receiving VA disability benefits. Pet'r's Pet., ECF No. 1 at 4. He argues this increase "does not come under the scope of [18 U.S.C.] § 3664(n)." *Id.* at 3. He reasons "§ 3664(n) 'refers to windfalls or sudden financial injection' . . . that 'become suddenly available' to the defendant"—not to the receipt of periodic VA disability payments. *Id.* at 5 (quoting *Hughes*, 914 F.3d 947, 951) ("We do not think the gradual accumulation of prison wages constitutes 'substantial resources' such that it fits within § 3664(n)'s ambit.")).

A restitution order by a federal court "is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986." 18 U.S.C. § 3613(c). It "may be enforced by the United States" in the same manner that United States recovers fines or "by all other available and reasonable means." 18 U.S.C. § 3664(m)(1)(A). It may be used to collect funds from pension plans. *United States v. DeCay*, 620 F.3d 534, 541 (5th Cir. 2010). It may also be used to collect money distributed in the form of VA benefits:

> Payments of benefits due or to become due under any law administered by the Secretary [of the Department of Veterans Affairs] shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

> *The preceding sentence shall not apply to claims of the United States arising under such laws.*

38 U.S.C. § 5301(a)(1) (emphasis added); *see also Metcalf v. United States*, No. 12-518C, 2013 WL 1517821, at *4 n.5 (Fed. Cl. Apr. 15, 2013) (stating that Section 5301(a)(1) "eliminate[s] any bar to the Federal Government attaching or seizing VA benefits.").

In addition, the Mandatory Victims Restitution Act (MVRA) permits the Government to collect money from any source when a defendant is ordered to pay restitution:

> If a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed.

18 U.S.C. § 3664(n).

Section 3613(a)(2) of the MVRA unambiguously provides the exemptions contained in the Federal Debt Collection Procedures Act (FDCPA), found at 28 U.S.C. § 3014, do not apply to the enforcement of federal criminal judgments. 18 U.S.C. § 3613(a)(2). Section 3613(a)(3) of the MVRA, however, explicitly states the provisions of the Consumer Credit Protection Act (CCPA), found at 15 U.S.C § 1673 do "apply to enforcement of the judgment under Federal law or State law." 18 U.S.C. § 3613(a)(3). Section 1673 of the CCPA limits the amount which can be garnished for restitution to 25 per cent of a debtor's disposable earnings in most cases. 15 U.S.C. § 1673(a). Under the CCPA, "[t]he term 'earnings' means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, *and includes periodic payments pursuant to a pension or retirement program*." *Id*. § 1672(a).

In *United States v. DeCay*, 620 F.3d 534 (5th Cir. 2010), the Fifth Circuit Court of Appeals determined the MVRA allowed garnishment of a criminal defendant's monthly retirement benefits

to satisfy a criminal restitution order. Specifically, it found that the monthly payments qualified as "periodic payments made pursuant to a pension or retirement program." *Id*. at 549 (citing 15 U.S.C. § 1672(a)). Accordingly, it held monthly pension payments qualified as "earnings" under the CCPA, and the United States was limited to collecting 25 percent of those monthly payments. *Id*.; *see* 15 U.S.C § 1673(a) ("the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed . . . 25 per centum of his disposable earnings for that week.").

In the case cited by Cabello to support his claim—*United States v. Hughes*, 914 F.3d 947 (5th Cir. 2019)—the Fifth Circuit reversed a turnover order after finding that the $3,464.85 accumulated in an inmate's trust fund account was largely from prison earnings and did not fall within § 3664(n). It explained "[w]e do not think the gradual accumulation of prison wages constitutes 'substantial resources' such that it fits within § 3664(n)'s ambit; rather we think this provision refers to windfalls or sudden financial injections." *Id*. at 951. In *United States v. Poff*, 781 F. App'x 593 (9th Cir. 2019), the Ninth Circuit Court of Appeals reached the same conclusion concerning prison wages—but not as to VA disability benefits. *Id*. at 595.

In *United States v. Lockhart*, 584 F. App'x 268 (5th Cir. 2014), the Fifth Circuit determined that " 'disposable earnings' as defined in [15 U.S.C.] § 1672(a) and (b) to mean 'compensation paid or payable for personal services." *Id.* at 270. As a result, the 25 percent cap did not apply to VA disability benefits because they were not compensation for personal services. *Metcalf*, 2013 WL 1517821.

Accordingly, after due consideration, the Court enters the following findings. First, the sentencing court ordered Cabello to pay a "[l]ump sum payment of $3,755,000.00 due

immediately" in restitution. *United States v. Cabello*, 3:10-CR-482 (D. Ore.), Am. J. Crim. Case 3, ECF No. 270 at 7. Second, the trial court further ordered "that resources received from any source, including inheritance, settlement, or any other judgment shall be applied to any restitution or fine still owed, pursuant to 18 USC § 3664(n)." *Id*. Third, Cabello volunteered to participate in the IFRP. Pet'r's Pet., ECF No. 1 at 4. Fourth, the United States and the BOP are permitted to collect restitution from Cabello's VA disability payments pursuant to 38 U.S.C. § 5301(a)(1). Fourth, Cabello's VA disability payments are "substantial resources" which fit within the scope of 18 U.S.C. § 3664(n). Fifth, Cabello's monthly VA disability payments are **not** qualified earnings under the CCPA, and the BOP is **not** limited by 15 U.S.C § 1673(a) to collecting no more than 25 percent of Cabello's VA disability payments. Sixth, Cabello's IFRP restitution payments were not improperly increased by Regional Director Tellez. Finally, for these reasons, Cabello cannot show he is in custody in violation of the Constitution, laws or treaties of the United States, and he is not entitled to § 2241 relief. 28 U.S.C. § 2241(c).

## CONCLUSION AND ORDERS

The Court concludes it plainly appears from Cabello petition and the attached exhibits that he not only failed to exhaust his administrative remedies but also failed to establish his claims merit relief. The Court therefore enters the following orders:

**IT IS ORDERED** that that Cabello's *pro se* "Petition for Relief" (ECF No. 1), which the Court construes as a petition for a writ of habeas corpus under 28 U.S.C. § 2241, is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust.

**IT IS FURTHER ORDERED** that all pending motions in this cause, if any, are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**SIGNED** this 31st day of January 2023.

_____
**FRANK MONTALVO**
**SENIOR UNITED STATES DISTRICT JUDGE**